JOSHUA H. WATSON, SBN 238058
**ARNOLD LAW FIRM**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
Email: jwatson@justice4you.com

Attorneys for PLAINTIFF
*JANET ROE*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET ROE<br><br>　　　PLAINTIFF,<br>vs.<br><br>MICHAEL REYNOLDS (in his individual and official capacities), and PATRICK WITHROW (in his official capacity),<br><br>　　　DEFENDANTS. | Case No.:<br><br>**COMPLAINT**<br><br>1. 42 USC § 1983 - D<br>2. 42 USC § 1983 - *MONELL* CLAIM<br>3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>***JURY TRIAL DEMANDED***<br>*PUNITIVE DAMAGES DEMANDED*<br>*INJUNCTIVE RELIEF REQUESTED* |

Comes now PLAINTIFF JANET ROE, who alleges and complains as follows on information and belief, and who prays for relief from the Court.

## SUMMARY

1. This is a case of sexual exploitation and grooming of a minor, Janet Roe (a pseudonym for protection of the plaintiff's privacy), by Sergeant Michael Reynolds, a sworn peace officer with the San Joaquin Sheriff's Office who has taken an oath to protect the public and uphold the law. Instead of honoring this oath, Reynolds used his position of authority to prey upon a sixteen-year-old girl, sending her sexually explicit images of himself in uniform while on duty, making inappropriate sexual comments, and attempting to isolate her from parental supervision through demands for secrecy.

2. This case is directly related to and reveals a disturbing pattern of conduct also seen in the case of Jane Doe v. County of San Joaquin, et al. (Case No. 2:24-cv-00899-CKD),

where the same officer, Sergeant Reynolds, sexually harassed and assaulted an adult female employee of the Sheriff's Office. The existence of multiple victims demonstrates that Reynolds' predatory behavior was not isolated but represents a pattern of misconduct that the San Joaquin Sheriff's Office failed to prevent, detect, or address.

3. Plaintiff brings this action against Defendant Reynolds in both his individual and official capacities for violations of her civil rights under 42 U.S.C. § 1983. Because significant portions of Reynolds' misconduct occurred while he was off duty and after he separated from the Sheriff's Office, Plaintiff also brings state tort claims against him that are not subject to the California Tort Claims Act's statute of limitations. Additionally, Plaintiff brings Monell claims against the San Joaquin Sheriff's Office and Sheriff Patrick Withrow for their deliberate indifference in failing to adequately train, supervise, and discipline officers, creating a culture where sexual misconduct could occur with impunity.

4. As with the Jane Doe case, the conduct at issue here calls into question not only the individual actions of Sergeant Reynolds but the policies, practices, and supervision failures of the Sheriff's Office itself. The department's apparent unwillingness to hold Reynolds accountable for his actions against Jane Doe—allowing him to retire without prosecution despite credible allegations of sexual assault—suggests an institutional disregard for the welfare of women and girls who come into contact with its officers.

5. The pattern of misconduct spanning multiple victims—one a minor and one an employee—reflects a systemic failure that demands both monetary damages for the harm caused to Janet Roe and injunctive relief to protect others from similar misconduct in the future.

**PARTIES**

6. JANET ROE (hereafter "PLAINTIFF") is currently an adult individual residing in California. PLAINTIFF was a minor at the time of the misconduct alleged herein. This Complaint is filed within less than two years of her reaching age 18.

a. PLAINTIFF is identified by pseudonym. PLAINTIFF will file and serve the Complaint with an ancillary document identifying the true legal name of PLAINTIFF. The ancillary document will be initially redacted in filing, but not in service. In this manner, Defendants shall at all times from service onward be aware of PLAINTIFF'S identity for notice and due process purposes. Further, PLAINTIFF has already made a police report that is known to all Defendants in which Defendants learned her true legal name such that all parties are or should be subjectively aware of the true legal name of JANET ROE. PLAINTIFF will promptly move for leave to be named by pseudonym in light of the highly personal nature of harm alleged in this matter. If the request is not granted, PLAINTIFF shall promptly file an unredacted copy of the redacted notice of true legal name.

7. COUNTY OF SAN JOAQUIN, and SAN JOAQUIN SHERIFF'S OFFICE are public entities in California located within the jurisdiction and venue of this Court. They are not parties directly.

8. MICHAEL REYNOLDS (in his individual and official capacities) and PATRICK WITHROW (in his official capacity) are each natural persons who engaged in conduct giving rise to liability within the jurisdiction and venue of this Court. On information and belief, each resides within the jurisdiction and venue of this Court.

9. PATRICK WITHROW is and was at all relevant times the Sheriff of the SAN JOAQUIN SHERIFF'S OFFICE, a division of the COUNTY OF SAN JOAQUIN. In his role as Sheriff, PATRICK WITHROW exercised his authority to set and enforce polices governing the terms and conditions of employment of personnel of the Sheriff's Office, including but not limited to that of REYNOLDS. In doing so, PATRICK WITHROW was responsible for both the policy-on-the-books and practices-in-action of the Sheriff's Office with respect to detecting, preventing, and addressing sexual harassment, sexual violence, and sexual misconduct by peace officers with respect to the

public. PATRICK WITHROW took actions relevant to this matter both in his individual and official capacities.

10. MICHAEL REYNOLDS is and was at all relevant times a deputy sheriff of the SAN JOAQUIN SHERIFF'S OFFICE, a division of the COUNTY OF SAN JOAQUIN. In his role as a deputy sheriff with the rank of Sergeant, MICHAEL REYNOLDS possessed authority as a sworn peace officer with powers of arrest, detention, and extraordinary influence over citizens, particularly minors. MICHAEL REYNOLDS abused his position of authority as a uniformed peace officer to contact, groom, and sexually exploit PLAINTIFF, a minor. In acting as alleged herein, MICHAEL REYNOLDS acted in both his individual and official capacities at various moments, including sending sexually explicit images of himself in uniform while on duty in a patrol vehicle. MICHAEL REYNOLDS also acted as an individual and as a person not employed by a California public entity (and therefore not subject to the California Tort Claims Act) in his actions taken after his employment with the Sheriff's Office terminated, as alleged herein. His conduct was enabled by the authority, access, and trust afforded to him by virtue of his position as a Sergeant with the SAN JOAQUIN SHERIFF'S OFFICE, which he exploited to initiate and maintain inappropriate contact with the minor PLAINTIFF.

## JURISDICTION AND VENUE

11. Subject matter jurisdiction exists because the Complaint alleges violation of federal law, specifically 42 USC § 1983. Supplemental jurisdiction applies to the transactionally related state law claims. 28 USC § 1367.

12. On information and belief, each of the Defendants who are natural persons live within the jurisdiction and venue of this Court. The events giving rise to this litigation occurred in and about Stockton, California.

## ALLEGATIONS

13. JANET ROE (hereafter "PLAINTIFF") is an adult individual currently residing in California. At all times relevant to this action, PLAINTIFF was a minor, age 16.

14. PLAINTIFF brings this action under a pseudonym due to the highly sensitive nature of the allegations, PLAINTIFF'S status as a minor at the time of the events, and to protect PLAINTIFF from further trauma, stigmatization, and retaliation.

15. MICHAEL REYNOLDS was at all relevant times employed as a Sergeant with the SAN JOAQUIN SHERIFF'S OFFICE until approximately February 2023.

16. In mid-2022, REYNOLDS began communicating with PLAINTIFF after being introduced through PLAINTIFF'S sister and mother, with whom REYNOLDS had a relationship.

17. REYNOLDS used his position as a law enforcement officer to establish trust with PLAINTIFF'S family and gain access to PLAINTIFF, who was 16 years old.

18. REYNOLDS initiated and maintained inappropriate communications with PLAINTIFF via text messages and various social media platforms, including Snapchat, despite knowing PLAINTIFF was a minor.

19. REYNOLDS sent PLAINTIFF sexually explicit images of himself while he was on duty, in his San Joaquin Sheriff's Office uniform, and sometimes within his patrol vehicle.

20. REYNOLDS made numerous sexually suggestive and explicit comments to PLAINTIFF, asked about her undergarments, and repeatedly requested photographs of PLAINTIFF.

21. REYNOLDS pressured PLAINTIFF to keep their communications secret from her mother, establishing a "pinky promise" that PLAINTIFF would not disclose their conversations.

22. REYNOLDS instructed PLAINTIFF to download a secure messaging application (Signal) that automatically deleted messages after viewing, which he initially set to delete after only one second.

23. REYNOLDS used PLAINTIFF'S prior trauma and vulnerabilities to manipulate her, asking invasive questions about past abuse after PLAINTIFF disclosed difficulties in her childhood.

24. REYNOLDS continued his inappropriate communications and conduct toward PLAINTIFF while on duty and after duty hours, leveraging his authority as a law enforcement officer to facilitate his misconduct.

25. REYNOLDS engaged in this pattern of grooming behavior with PLAINTIFF contemporaneously with his sexual harassment and assault of employee JANE DOE at the SAN JOAQUIN SHERIFF'S OFFICE, as documented in Case No. 2:24-cv-00899-CKD.

26. The SAN JOAQUIN SHERIFF'S OFFICE and SHERIFF PATRICK WITHROW failed to properly supervise, train, or discipline REYNOLDS despite his pattern of misconduct, enabling his predatory behavior toward both PLAINTIFF and JANE DOE.

27. Upon information and belief, the SAN JOAQUIN SHERIFF'S OFFICE has a pattern and practice of failing to adequately address sexual misconduct by its officers, particularly when such misconduct targets women and girls.

28. REYNOLDS was permitted to retire from the SAN JOAQUIN SHERIFF'S OFFICE without facing disciplinary action or criminal charges for his misconduct toward JANE DOE or PLAINTIFF.

29. As a direct and proximate result of DEFENDANTS' actions and inactions, PLAINTIFF suffered severe emotional distress, psychological trauma, and ongoing harm.

30. Upon information and belief, prior to REYNOLDS' misconduct toward PLAINTIFF, the SAN JOAQUIN SHERIFF'S OFFICE and SHERIFF PATRICK WITHROW were aware that REYNOLDS had engaged in inappropriate conduct toward female employees and citizens, yet failed to take appropriate disciplinary or corrective action.

31. Upon information and belief, the SAN JOAQUIN SHERIFF'S OFFICE and SHERIFF PATRICK WITHROW were aware that REYNOLDS had a substance abuse problem that impaired his judgment and fitness for duty, particularly in a supervisory capacity, yet permitted him to remain in a position of enhanced authority as both a supervisor and peace officer.

32. The SAN JOAQUIN SHERIFF'S OFFICE has a documented history of protecting officers who engage in misconduct. Dr. Bennet Omalu, a San Joaquin coroner employee, publicly resigned from his position, explicitly stating that the SHERIFF'S OFFICE interfered in cases as part of a practice of covering up evidence of officer misconduct.

33. A female San Joaquin coroner employee alleged that REYNOLDS harassed her in 2018, describing him as condescending and creating daily frustration, stress, and anxiety. Upon information and belief, the SHERIFF'S OFFICE took no meaningful action in response to these allegations.

34. REYNOLDS openly bragged to JANE DOE about how department officers backed each other against women, reflecting a departmental culture that enabled and protected those who engaged in sexual harassment and misconduct.

35. Senior medical examiner staff within the SAN JOAQUIN SHERIFF'S OFFICE have resigned in protest over what they described as a toxic culture that protected SHERIFF'S OFFICE employees from accountability for misconduct.

36. Upon information and belief, there are additional victims of sexual harassment and misconduct by REYNOLDS beyond PLAINTIFF and JANE DOE, and the SAN JOAQUIN SHERIFF'S OFFICE was aware of these incidents yet failed to take appropriate action to protect the public.

37. The SAN JOAQUIN SHERIFF'S OFFICE failed to implement adequate training, supervision, and disciplinary procedures despite knowledge of multiple incidents involving REYNOLDS and other officers engaging in sexual misconduct toward women and girls.

38. When made aware of REYNOLDS' misconduct toward JANE DOE and also JANET ROE, the SAN JOAQUIN SHERIFF'S OFFICE failed to refer either matter for criminal prosecution despite the serious nature of the allegations, allowing REYNOLDS to retire with his pension and benefits intact. This reflected ratification of REYNOLDS' conduct.

39. Had the SAN JOAQUIN SHERIFF'S OFFICE taken appropriate action in response to earlier complaints about REYNOLDS, his abuse of PLAINTIFF could have been prevented.

40. In acting as alleged herein, each DEFENDANT acted in knowing and conscious disregard of PLAINTIFF'S rights.

41. As a direct and proximate result of the foregoing course of events and experiences, PLAINTIFF has suffered injury and attendant damages.

42. PLAINTIFF seeks compensatory damages, punitive damages as permitted, litigation costs, attorney's fees, and injunctive relief requiring COUNTY OF SAN JOAQUIN and SAN JOAQUIN SHERIFF'S OFFICE to make effective changes to policy-on-the-books and practices-in-action to provide for appropriate prevention of gender-based violence and harassment, detection of such misconduct, and appropriate response to such misconduct including but not limited to:

    a. That the County establish or strengthen a civilian sheriff oversight board pursuant to the authority granted under California Assembly Bill 1185 (effective January 1, 2021), with subpoena power and the authority to independently investigate allegations of gender-based violence, harassment, and misconduct;

    b. That the Office expressly and unambiguously instruct all personnel that the chain of command may and must be disregarded to report any improper gender-based harassment or violence to a designated independent contact outside the Sheriff's Office;

    c. That the Office adopt and enforce a policy and practice of automatically referring any potentially credible allegation of gender-based violence or harassment by a peace officer to an independent investigation agency or authority;

d. That the Office adopt and enforce a policy and practice of referring every sustained allegation of gender-based violence or harassment by a peace officer to the appropriate state or federal criminal prosecutor;

e. That the Office implement mandatory trauma-informed training for all peace officers regarding appropriate professional boundaries, recognizing signs of gender-based harassment and violence, and preventing such conduct through clear policies and procedures;

f. That the Office implement a specific policy prohibiting peace officers from engaging in conduct that could constitute gender-based harassment or violence, with clear disciplinary consequences for violations;

g. That the Office require peace officers to disclose all social media accounts and electronic communication platforms used for any purpose, with regular auditing to ensure compliance with departmental policies regarding appropriate professional communications;

h. That every victim of gender-based violence or harassment by peace officers be provided with an advisory by the Office of their rights to (1) contact other law enforcement agencies for help; (2) contact the California Civil Rights Department for help along with an advisory of the applicable statute of limitations; (3) contact appropriate victim advocacy organizations; (4) submit a California Tort Claim along with reference to a resource on how to do so and an advisory of the applicable statute of limitations; (5) contact private counsel of their choice to consult as to these rights, along with contact information for relevant legal resources;

i. That SJSO adopt policies and practices in training, supervision, and retention consistent with trauma-informed policing, with special emphasis on preventing and addressing gender-based violence and harassment, addressing the reality that past and on-the-job trauma and related bias prompt and contribute to the harmful behaviors seen here by both MICHAEL

REYNOLDS and SJSO as an entity, and mandating the same trauma-informed approaches as required in the JANE DOE case (Case No. 2:24-cv-00899-CKD); *See, e.g.*,

https://ovc.ojp.gov/program/vtt/tools-law-enforcement;

https://www.justice.gov/ovw/page/file/1509456/dl?inline;

https://www.samhsa.gov/gains-center/trauma-training-criminal-justice-professionals;

https://www.sa.gov/Directory/News/News-Releases/San-Antonio-Departments-Receive-Trauma-Informed-Care-Certification;

https://health.maryland.gov/bha/Documents/Trauma-Informed%20Policing%20-%20Betsy%20Wexler.pdf;

https://www.cambridgema.gov/-/media/Files/policedepartment/SpecialReports/guideforatraumainformedlawenforcementinitiative.pdf;

https://www.oregon.gov/dpsst/cpe/pages/trauma-informed-practices.aspx.

j. That an appropriate monitoring and compliance-verification program be established to the Court's satisfaction, with regular public reporting on implementation progress and outcomes.

## COUNTS

## COUNT 1

## VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS - 42 USC § 1983

## BY PLAINTIFF AGAINST MICHAEL REYNOLDS

### (in his individual and official capacities)

43. PLAINTIFF incorporates all prior paragraphs by reference.

44. "Section 1983 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred.'" In order to state a claim under § 1983, a plaintiff must plausibly allege that "she suffered the deprivation of a federally protected right and that 'the alleged deprivation was committed by a person acting under color of state law.'"

45. The Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law."

46. The substantive component of the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."

47. Government conduct that "shocks the conscience" violates substantive due process rights. Conduct that "shocks the conscience" includes actions by government officials that involve "the exercise of power without any reasonable justification in the service of a legitimate governmental objective."

48. REYNOLDS, acting under color of state law as a sergeant with the SAN JOAQUIN SHERIFF'S OFFICE, engaged in conduct toward PLAINTIFF that "shocks the conscience" and was so egregious as to constitute a violation of PLAINTIFF'S constitutional right to bodily integrity and personal security.

49. REYNOLDS' conduct included, but was not limited to:

50. a. Using his position as a sworn peace officer to initiate and maintain inappropriate communications with PLAINTIFF, a minor;

51. b. Sending PLAINTIFF sexually explicit images of himself while in his San Joaquin Sheriff's Office uniform and while on duty in his patrol vehicle;

52. c. Making sexually suggestive and explicit comments to PLAINTIFF;

53. d. Pressuring PLAINTIFF to keep their communications secret;

54. e. Instructing PLAINTIFF to download secure messaging applications designed to automatically delete messages;

55. f. Using PLAINTIFF'S prior vulnerabilities and trauma to manipulate her;

56. g. Using his authority as a peace officer to intimidate PLAINTIFF.

57. REYNOLDS' conduct was committed while acting under color of state law, as he explicitly used his position as a sergeant with the SAN JOAQUIN SHERIFF'S OFFICE to initiate contact with PLAINTIFF, to maintain contact with PLAINTIFF, to intimidate PLAINTIFF, and to coerce PLAINTIFF.

58. REYNOLDS' conduct exceeded any legitimate law enforcement purpose and was undertaken for his own personal gratification.

59. REYNOLDS' misconduct was objectively unreasonable and done intentionally and with willful indifference to PLAINTIFF'S constitutional rights.

60. REYNOLDS' actions shock the conscience as they involve exploitation of his position of authority as a law enforcement officer to engage in predatory behavior toward a minor.

61. PLAINTIFF was entitled to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

62. REYNOLDS intentionally discriminated against PLAINTIFF based on her gender.

63. REYNOLDS targeted PLAINTIFF for sexual exploitation because she was female.

64. REYNOLDS would not have subjected males to the same sexually inappropriate conduct.

65. REYNOLDS' gender-based misconduct denied PLAINTIFF equal protection of the laws.

66. REYNOLDS acted with discriminatory intent, knowingly imposing gender-based mistreatment on PLAINTIFF.

67. REYNOLDS' gender discrimination violated PLAINTIFF'S clearly established constitutional rights.

68. As a direct and proximate result of REYNOLDS' violation of PLAINTIFF'S equal protection rights, PLAINTIFF suffered injuries including emotional distress and psychological trauma.

69. REYNOLDS, acting in his official capacity, affirmatively created dangers for PLAINTIFF that would not otherwise have existed.

COMPLAINT

70. REYNOLDS used his position of authority to cultivate a relationship with PLAINTIFF'S family, gaining access to and trust from PLAINTIFF.
71. REYNOLDS exploited his official role to obtain PLAINTIFF'S personal contact information from official sources without authorization.
72. REYNOLDS created a danger by isolating PLAINTIFF from potential sources of protection and support.
73. REYNOLDS pressured PLAINTIFF to download secure messaging applications and maintain secrecy, deliberately removing safeguards that might have protected PLAINTIFF.
74. REYNOLDS pressured PLAINTIFF to maintain secrecy about their communications through "pinky promises" and emotional manipulation.
75. REYNOLDS instructed PLAINTIFF to use secure messaging applications that automatically deleted messages, deliberately removing evidence that might have led to his misconduct being discovered.
76. REYNOLDS' actions as a state actor deliberately removed protective barriers that would have existed for PLAINTIFF.
77. REYNOLDS acted with deliberate indifference to the obvious dangers his conduct created for PLAINTIFF.
78. As a direct result of the dangers REYNOLDS created through his official position, PLAINTIFF suffered severe emotional and psychological harm.
79. As a direct and proximate result of REYNOLDS' violations of PLAINTIFF'S constitutional rights, PLAINTIFF has suffered and continues to suffer injuries including but not limited to emotional distress, psychological trauma, and ongoing psychological harm.
80. REYNOLDS is not entitled to qualified immunity for his actions. The right to bodily integrity and to be free from sexual exploitation by government officials is clearly established. Any reasonable officer would have known that using one's position as a law

enforcement officer to engage in sexually predatory conduct toward a minor violates clearly established constitutional rights.

81. PLAINTIFF seeks compensatory damages, punitive damages, attorney's fees pursuant to 42 USC § 1988, and costs of suit.

# COUNT NO. 2

## VIOLATION OF FOURTEENTH AMENDMENT - MONELL CLAIM - 42 USC § 1983

### BY PLAINTIFF AGAINST PATRICK WITHROW (in his official capacity)

82. PLAINTIFF incorporates all prior paragraphs by reference.

83. PATRICK WITHROW, in his official capacity as Sheriff of SAN JOAQUIN COUNTY, was at all relevant times responsible for the supervision, administration, policies, practices, procedures, and customs of the SAN JOAQUIN SHERIFF'S OFFICE.

84. PATRICK WITHROW was responsible for the hiring, training, discipline, and supervision of the SAN JOAQUIN SHERIFF'S OFFICE'S employees and agents, including MICHAEL REYNOLDS.

85. At all times relevant to this litigation, PATRICK WITHROW was acting under color of state law.

86. The Fourteenth Amendment to the United States Constitution guarantees equal protection of the laws and prohibits state actors from depriving individuals of their constitutional rights to due process and bodily integrity.

87. PATRICK WITHROW, in his official capacity, has implemented, enforced, encouraged, and sanctioned policies, practices, and customs of the SAN JOAQUIN SHERIFF'S OFFICE that have failed to adequately prevent, detect, and address gender-based exploitation, harassment, and misconduct by sheriff's deputies.

88. These policies, practices, and customs include, but are not limited to:

    a. Failing to provide adequate training to deputies regarding appropriate professional boundaries, particularly when interacting with minors and vulnerable individuals;

    b. Failing to implement effective mechanisms for detecting misconduct by deputies, particularly predatory and sexually exploitative behaviors;

    c. Failing to properly investigate allegations of sexual misconduct by deputies;

    d. Maintaining a culture that discourages reporting of sexual misconduct and protects deputies accused of such misconduct;

      e. Failing to discipline deputies who engage in sexual misconduct;

      f. Allowing deputies with known substance abuse problems and/or histories of inappropriate conduct to remain in positions of authority;

      g. Failing to implement adequate supervisory mechanisms to monitor deputies' communications and interactions with members of the public, particularly vulnerable individuals.

89. PATRICK WITHROW had actual or constructive knowledge that:

      a. There had been prior incidents of sexual misconduct by deputies within the SAN JOAQUIN SHERIFF'S OFFICE, including by MICHAEL REYNOLDS;

      b. A female San Joaquin coroner employee had alleged that REYNOLDS harassed her in 2018;

      c. REYNOLDS bragged about how department officers backed each other against women;

      d. Senior staff, including medical examiners, had resigned in protest over what they described as a toxic culture that protected SHERIFF'S OFFICE employees from accountability for misconduct.

90. Despite this knowledge, PATRICK WITHROW deliberately failed to take reasonable measures to train, supervise, or discipline deputies, instead maintaining a culture of impunity within the SAN JOAQUIN SHERIFF'S OFFICE.

91. PATRICK WITHROW's deliberate indifference to the need for adequate training, supervision, and discipline of deputies foreseeably led to the violation of PLAINTIFF'S constitutional rights.

92. PATRICK WITHROW's policies, practices, and customs were the moving force behind the violation of PLAINTIFF'S constitutional rights by MICHAEL REYNOLDS.

93. PLAINTIFF has suffered and continues to suffer injuries as a direct and proximate result of PATRICK WITHROW's policies, practices, and customs.

94. PLAINTIFF seeks injunctive relief requiring PATRICK WITHROW to implement policies and procedures to protect individuals from gender-based harassment and

exploitation by deputies of the SAN JOAQUIN SHERIFF'S OFFICE, including but not limited to:

    a. Establishing or strengthening a civilian sheriff oversight board pursuant to California Assembly Bill 1185;

    b. Implementing mandatory training on preventing gender-based harassment and violence;

    c. Creating independent mechanisms for reporting and investigating allegations of misconduct;

    d. Adopting trauma-informed policies and practices;

    e. Providing appropriate resources and support for victims of misconduct;

    f. Implementing systematic monitoring and compliance verification.

95. PATRICK WITHROW affirmatively placed PLAINTIFF in danger she would not otherwise have faced.

96. PATRICK WITHROW increased danger to PLAINTIFF by:

    a. Protecting deputies accused of sexual misconduct;

    b. Failing to investigate prior allegations against REYNOLDS;

    c. Keeping REYNOLDS in a position of authority despite knowledge of his behavior;

    d. Creating a culture of impunity for misconduct by deputies;

    e. Neglecting to implement policies to detect and prevent sexual exploitation.

97. PATRICK WITHROW acted with deliberate indifference to known risks of deputies abusing authority.

98. PATRICK WITHROW'S actions made PLAINTIFF more vulnerable to harm by exposing her to a deputy with a history of misconduct.

99. PATRICK WITHROW'S creation of this danger directly caused PLAINTIFF'S injuries.

100. PLAINTIFF suffered emotional distress and psychological trauma as a result of the danger PATRICK WITHROW created.

101. PLAINTIFF further seeks attorney's fees pursuant to 42 USC § 1988 and costs of suit.

**Count No. 10**

**Intentional Infliction of Emotional Distress - CACI 1600**

**BY PLAINTIFF AGAINST MICHAEL REYNOLDS**

102. PLAINTIFF incorporates all prior paragraphs by reference.

103. This Count is pled in the alternative, to the extent MICHAEL REYNOLDS is found to have acted outside his official capacity at any time during the events alleged herein.

104. To the extent that any of REYNOLDS' conduct was not performed in his official capacity as a deputy of the SAN JOAQUIN SHERIFF'S OFFICE, such conduct is not subject to any tort claim or other administrative process that limits his liability as an individual or requires any prelitigation exhaustion of administrative remedies.

105. MICHAEL REYNOLDS engaged in outrageous conduct against PLAINTIFF as alleged herein.

106. MICHAEL REYNOLDS intended to cause PLAINTIFF emotional distress and/or acted with reckless disregard of the probability that PLAINTIFF would suffer emotional distress knowing that PLAINTIFF was present when the conduct occurred.

107. REYNOLDS knew that PLAINTIFF was particularly vulnerable due to her age, prior trauma, and the power imbalance between them, yet he deliberately exploited these vulnerabilities.

108. REYNOLDS' outrageous conduct included, but was not limited to:

   a. Sending PLAINTIFF sexually explicit images of himself;

   b. Making sexually suggestive and inappropriate comments to a minor;

   c. Sending and requesting sexually explicit messages and images;

   d. Pressuring PLAINTIFF to maintain secrecy about their communications;

   e. Using emotional manipulation to control PLAINTIFF;

   f. Exploiting PLAINTIFF'S personal vulnerabilities.

109. REYNOLDS' conduct was so extreme as to exceed all bounds of decency accepted in a civilized society. His behavior was particularly outrageous given his position as a law enforcement officer who had taken an oath to protect the public.

110. REYNOLDS acted with reckless disregard for the high probability that his conduct would cause PLAINTIFF severe emotional distress. His continued contact despite PLAINTIFF'S evident discomfort demonstrated willful and conscious disregard for PLAINTIFF'S emotional well-being.

111. As a direct and proximate result of REYNOLDS' outrageous conduct, PLAINTIFF suffered severe emotional distress, including but not limited to anxiety, depression, shame, and ongoing psychological trauma.

112. PLAINTIFF'S emotional distress was so substantial and long-lasting that no reasonable person should be expected to endure it.

113. PLAINTIFF seeks compensatory damages (including economic and non-economic damages), attorney's fees, costs of litigation, and all other appropriate relief within the Court's discretion.

114. PLAINTIFF seeks punitive damages as to this count given the malicious and oppressive conduct by MICHAEL REYNOLDS, as alleged, which demonstrates a conscious disregard for PLAINTIFF'S rights and safety.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment as follows, noting that the Counts alleged above clarify which remedies are sought in each Count:

1. For economic damages;
2. For noneconomic damages;
3. For punitive damages;
4. For injunctive relief as pled herein;
5. For prejudgment interest to the extent allowed by law;
6. For attorney's fees as provided by law;
7. For costs of litigation;
8. For such other and further relief as this court deems just and proper.

PLAINTIFF notes that each Count in this pleading sets forth the relief requested, and that care was taken to plead relief appropriate to each party and legal theory alleged in each Count.

For example, PLAINTIFF has not requested punitive damages against public entities or requested damages for Sheriff Withrow, in keeping with law.

For due process purposes, PLAINTIFF asserts damages of up to $2,000,000 (Two Million Dollars). This number may be adjusted upwards or downwards in keeping with information obtained in conformity with law, and is asserted here for default-judgment purposes.

Respectfully submitted,

Date: April 9, 2025          CLAYEO C. ARNOLD, PC


By: /s/ Joshua H. Watson
    Joshua H. Watson
    Attorneys for PLAINTIFF

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all matters subject to determination by a jury.

Date: April 9, 2025          CLAYEO C. ARNOLD, PC


By: /s/ Joshua H. Watson
    Joshua H. Watson
    Attorney for PLAINTIFF