JOSHUA H. WATSON, SBN 238058
**ARNOLD LAW FIRM**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
Email: jwatson@justice4you.com

Attorneys for PLAINTIFF
*JANET ROE*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANET ROE,<br><br>    PLAINTIFF,<br>vs.<br><br>MICHAEL REYNOLDS (in his individual and official capacities), and PATRICK WITHROW (in his official capacity),<br><br>    DEFENDANTS. | Case No.:<br><br>**MOTION TO PROCEED UNDER A PSEUDONYM; WATSON DECLARATION** |

To the Court, All Parties, and Counsel of Record: PLEASE TAKE NOTICE

Plaintiff JANET ROE will at the time set by the Court and does hereby move for an order permitting plaintiff to proceed under a pseudonym.

In general, a complaint must state the names of all parties. *See,* Fed. R. Civ. P. 10(a); 17(a). However:

> In the Ninth Circuit, a party may proceed with the use of a pseudonym "in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.' " Advanced Textile Corp., 214 F.3d at 1067-68 (quoting United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (alteration in quoting source)). The Ninth Circuit held that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." Advanced Textile Corp., 214 F.3d at 1068.
>
> Courts have generally allowed a party to proceed with anonymity in three circumstances: "1) when identification creates a risk of retaliatory physical or mental harm[;]" 2) where it is necessary "to preserve privacy in a matter of sensitive and highly personal nature[;]" and 3) where the party is "compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution[.]" Advanced Textile Corp., 214 F.3d at 1068 (internal citations omitted).
>
> *Doe v. United States Citizenship and Immigration Services, 1:21-cv-00576-NE-SAB, 8 (E.D. Cal. May. 31, 2021)*

As pled in the Complaint, JANET ROE was sexually harassed by a peace officer while she was a minor, with wrongful conduct including illicit messages and pictures, home visitations, and attempts to isolate the minor. This conduct caused JANET ROE severe emotional distress. *See,* Complaint at paras 1, 6, 8, 13-29. The peace officer alleged to have engaged in this conduct is also alleged to have engaged at about the same time in sexual harassment of coerced sex with a civilian employee of his employing agency in the matter of Doe v San Joaquin County Sheriff's Office County of San Joaquin, et al. (Case No. 2:24-cv-00899-WBS). *See,* Complaint at paras 2, 25. Plaintiff alleges that other women were also impacted by the peace officer's conduct and a culture of permissiveness around it at the employing agency. *See,* Complaint at paras 26-38.)

Based on my in person interview of JANET ROE, consultation with a highly qualified expert witness on sexual trauma retained to consult on this matter, my work on the related JANE ROE matter, and my familiarity with the needs of sexual violence victims in the context of rights-vindication, I believe that JANET ROE will suffer substantial harm if her name is publicly released in the docket, particularly at the early stages of this matter.  JANET ROE is deeply traumatized, and will be required to necessarily discuss abuse as a child.  This case is likely to receive a measure of publicity, and the DOE matter did generate news coverage in the local area of the case.  This creates a risk that ROE will face public discussion in which disclosure of her identity could cause her serious harm and impede her recovery and well-being.  *See,* Watson Declaration, below.

JANET ROE, though her mother, already made a police complaint about this matter which was investigated.  Her mother also confronted the peace officer, who was formerly a family friend.  Consequently, all Defendants are, or should be, subjectively aware of who JANET ROE is.  Further, the Complaint is drafted in a manner that allows JANET ROE to serve an unredacted copy of the Notice of True Legal Name document to ensure that Defendants have actual knowledge of the name of the PLAINTIFF throughout the entire matter.  Plaintiff has already committed to providing such notice in the Notice of True Legal Name document.  In this way there is no prejudice to any Defendant, but the Plaintiff's legitimate need for privacy and healing is respected.

If the Court allows JANET ROE to proceed under a pseudonym, Plaintiff shall promptly file a motion to file the unredacted versions of the Notice of True Legal Name under seal.

Respectfully submitted,

Date:  April 10, 2025                                ARNOLD LAW FIRM

                By:  ___/s/ Joshua H. Watson_____
                   Joshua H. Watson
                   Attorneys for PLAINTIFF

**DECLARATION OF JOSHUA H. WATSON**

I, Joshua H. Watson, declare the following to be true:

1. I am an attorney licensed to practice in California, and admitted to practice before the U.S. District Court for the Eastern District of California. I practice at the Arnold Law Firm in Sacramento. I am counsel of record for the plaintiff in this matter. In that role, I had diligently conducted an initial investigation into the facts and circumstances of the case. My investigation has included personally interviewing the plaintiff, review of related evidence and consultation with a retained consulting expert witness. I also have worked as lead counsel for the plaintiff in the related matter of Doe v San Joaquin County Sheriff's Office County of San Joaquin, et al. (Case No. 2:24-cv-00899-WBS), which provides me with enhanced context for understanding ROE's allegations and the impact of public disclosure of her name on her well-being.

2. I have been licensed as an attorney since 2005. In that time I have represented victims of violence and sexual violence on multiple occasions, including in a peace officer sexual misconduct matter with a months-long civil trial in which I represented a sexually abused youth incarcerated by the State of California. I have also represented several women who have been subjected to sexual harassment and sexual assault, and through that work have acquired a base of professional knowledge related to the presentation of sexual abuse victims, critical review of meritorious and non-meritorious claims at the case-intake stage, and the general medical-legal issues, psychological diagnoses, and presenting behaviors in sexual violence victims. Prior to law school, I earned a degree in Cultural Anthropology, which included coursework related to sexual violence. I have built on that educational background during the course of my work as an attorney.

3. I make the factual statements herein based on my work on this matter and my professional training and experience.

4. Plaintiff JANET ROE presented in person to me in a fashion consistent with a person undergoing substantial trauma. Her conduct included shame, avoidance, need for a family member for support, crying, physical movements reflecting emotional discomfort,

and emotional difficulty discussing the key factual issues in this matter. I noted in interviewing JANET ROE and studying the available documents in her case that she reflected the avoidance-behaviors common with substantial trauma. I noted that ROE sought and received counseling for her emotional distress from the alleged events.

5. In my view, JANET ROE'S is consistent with being deeply traumatized by sexual misconduct directed towards her by an authority figure while she was a minor. The accused peace officer was both an adult in her greater family-life circle and associated with her mother, and also commonly presented himself as an in-uniform on-duty peace officer. This imbalance of power, in my view, can be credibly seen to have enhanced the impact of the subject alleged misconduct on ROE.

6. In my experience, litigation of sexual violence cases are especially difficult for victims. Public scrutiny of sexuality, blaming the victim, and the unfortunate tendency of defense counsel to portray victims as promiscuous and "crazy" causes substantial harm to the wellbeing of sexual violence victims. *See, e.g.,* https://iris.who.int/bitstream/handle/10665/77434/;jsessionid=2C4D13EE63D933832FA8F77F513378A7?sequence=1 [World Health Organization stating "There are many logical reasons women do not report sexual violence, including: inadequate support systems; shame; fear or risk of retaliation; fear or risk of being blamed; rear or risk of not being believed; fear or risk of being mistreated and/or socially ostracized."]

7. It is reasonably likely that there will be some level of public discourse in this case given the history of San Joaquin Sheriff's Office with harassment, violence towards women in the past, and particularly news coverage of the same. *See, e.g.,* https://www.sjgov.org/docs/default-source/district-attorney-documents/nicholas-bloed.pdf?sfvrsn=caec620c_1 [15 count criminal complaint against "friend" of the offending officer in this matter for sexual abuse in the course of duty]; https://www.kqed.org/news/11648821/how-families-in-san-joaquin-county-pay-for-coroner-mistakes [PBS news story about alleged misconduct by San Jose Sheriff's Office regarding covering up peace officer misconduct, leading to the resignation of two

medical examiners]; https://www.abc10.com/article/news/local/san-joaquins-forensic-pathologist-resigns-claims-intolerable-work-environment/103-495201944 [reporting that a female medical examiner described the work environment as "personally unbearable and professionally unsustainable."]; https://www.abc10.com/article/news/crime/stockton-police-sgt-nicholas-bloed-booked-jail-sexual-assault-accusations/103-51bc34ac-d892-47ee-8e3c-d2b7725eb462 [ABC 10 story regarding criminal prosecution of the other officer not named in this instant matter].

8. The U.S. Department of Justice, Office of Justice Programs states "Maintaining confidentiality is vital if sexual assault victims are to receive the assistance they need and deserve."  https://www.ojp.gov/pdffiles1/Digitization/226501NCJRS.pdf at 1.  The Office explains further "If the effects of trauma are disempowerment and disconnection from others, then the objective of recovery is to empower the victim and establish new connections.  Confidentiality plays a vital role in the recovery process because it helps establish an environment in which victims feel more comfortable seeking assistance, making connections, and exercising their power within their right to choose what information to share, with whom, when, and how." Id. at 5.

9. In my professional opinion, based on my experience with victims of sexual violence and review of the pertinent literature, coupled with my in-person meeting with JANET ROE and identification of her legal-medical needs, it would be exceptionally harmful for JANET ROE to have her name released in the public docket.  Doing so invites reporters and the currently corrosive environment of Internet commenters to speak about JANET ROE by name in a way that invades her personal life, impairs her hearing, and causes embarrassment for her in front of her family and peers.  It seems axiomatic that a young woman can be re-traumatized by discussing her sexual abuse as a minor.

10. I have substantial concern that if JANET ROE is forced to proceed with her true legal name in the public docket at this stage, she will, acting from her place of trauma, decline to move forward in the litigation, thereby incurring harm to herself and allowing the

offending persons, who have not been criminally prosecuted, to escape any accountability for what appears to be a profound and unforgivable breach of the public trust.

The forgoing is true and correct under penalty of perjury pursuant to the laws of the State of California and the United States of America. Executed in San Francisco on April 10, 2025.

Signed:    /s/ Joshua H. Watson
                Joshua H. Watson